UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HAROLD HARRIS,

              Plaintiff,                              **MEMORANDUM & ORDER**

          -against-                                 Civil Action No. 08-3356

MICHAEL J. ASTRUE, Commissioner
of Social Security,

              Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff:**
Jeffrey Delott, Esq.
366 North Broadway, Suite 410
Jericho, NY 11753

**For the Defendant:**
Benton J. Campbell
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
By: Diane Leonardo Beckmann

**HURLEY, Senior District Judge:**

      Plaintiff, Harold Harris, ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner" or "Defendant") which denied his claim for disability benefits. Presently before the Court are Plaintiff's and Defendant's motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Both parties seek reversal of the Commissioner's decision. Plaintiff, however, seeks a remand solely for the calculation of benefits while Defendant seeks remand for rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). For

the reasons discussed below, the decision of the Commissioner is reversed and the matter is remanded for rehearing pursuant to the fourth sentence of 42 U.S.C. §405(g).

**Background**

**I.     Procedural Background**

Plaintiff applied for Social Security Disability and Supplemental Security Income benefits on February 1, 2006 alleging he became disabled on March 7, 2005. (Tr.14, 22).[1] The claims were denied on March 10, 2006. (*Id.* 14.) Plaintiff filed a timely request for a hearing by an administrative law judge ("ALJ") on May 11, 2006. (*Id.* 14, 28.) On October 16, 2007, Plaintiff appeared with counsel at the administrative hearing held before ALJ Andrew S. Weiss. (*Id.* 204-18.)

ALJ Weiss issued a decision November 28, 2007, denying Plaintiff's claims. (Tr. 20-21.) ALJ Weiss found that Plaintiff was unable to perform his "past relevant work" but was not disabled because he had the residual functioning capacity ("RFC") to perform light work. (*Id.*) Thereafter, Plaintiff requested the Appeals Council ("AC") to review the decision. (Tr. 10.) By notice dated July 10, 2008, the AC denied Plaintiff's request for review, rendering the ALJ's decision the "final decision" of the Defendant. (*Id.* 2-7.)

**II.    Factual Background**

   **A.     Non-Medical Evidence**

Plaintiff was born September 6, 1953 and was 54 years old at the time of the hearing. (Tr. 20, 22, 44.) He has a limited education, having completed only the 10th grade. From 1986 until 2005, Plaintiff worked at Brunswick Hospital as a dietary aide. (*Id.* 36, 47, 48, 55.)

---

[1] References to "Tr." are to the Administrative Record filed in this case.

Plaintiff testified he lived with his fiancee at the time of the hearing. (*Id.* 206.)

Plaintiff testified that on March 7, 2005, he slipped at work as a result of a "busted pipe" and injured his back. (Tr. 210.) He has not worked since his injury. (*Id.* 212.) Plaintiff receives Worker's Compensation benefits in the amount of $156.00 every two weeks. (*Id.* 211.)

Since his injury, Plaintiff has been going to physical therapy three times a week for two years, for forty-five minutes to an hour each visit. (Tr. 207.) Plaintiff testified to some improvement from physical therapy. (*Id.* 208.) According to Plaintiff, he is able to walk around but he experiences pain. (*Id.*) He does not drive and uses public transportation to consult with his lawyer. (*Id.* 208-09). He walks to and from physical therapy because it is a "five-minute walk" from his home. (*Id.*).

Plaintiff's daily activities include playing cards, having conversations and going for walks with his fiancee. (Tr. 214.) Plaintiff indicated he and his fiancee would walk for about a mile, although he clarified that after a half mile he experiences pain. (*Id.* at 214-15.) He also goes shopping with his fiancee, although he does not do any shopping because of his back pain. (*Id.* 212.) Plaintiff reports that he is unable to help with chores around the house. (*Id.*) According to Plaintiff, he is only able to lift five pounds before his back begins to bother him. (*Id.* 213.) He can sit for "awhile" and stand for about fifteen to twenty minutes before he experiences pain. (*Id.* at 213-15.) He takes medications two to three times a day to relax the muscles in his back. (*Id.*) In addition, he takes pain medication as needed, which is about twice a week. (*Id.* 213).

### B. Medical Evidence

#### 1. Dr. Michael Carroll - Orthopedic Surgeon

Shortly after his accident, Plaintiff started seeing Dr. Michael Carroll, a board certified

orthopedic surgeon. He was referred to Dr. Carroll by his family doctor. (Tr. 93-94.) Dr. Carroll first examined Plaintiff on March 28, 2005. His examination revealed tenderness of the mid-lumbar spine with pain on forward flexion at 45 degrees; straight leg raising and neurologic examination were both normal. (*Id.* 94, 97.) X-rays taken from three views of the lumbosacral spine showed minimal degenerative changes of the lumbar spine. (*Id.* 97.) He diagnosed an acute lumbar sprain with possible disc injury and prescribed physical therapy and Naprosyn. (*Id.*)

Plaintiff was examined by Dr. Carroll again on April 28, 2005. The doctor noted Plaintiff continued to suffer back pain and still could not bend or do heavy lifting, despite physical therapy. (*Id*. at 91, 98.) He recommended Plaintiff "continue with physical therapy, stay out of work and use Naprosyn as needed." (*Id.*)

Dr. Carroll examined Plaintiff again on June 2, 2005. (TR. 89, 99.) He noted that Plaintiff was getting relief with physical therapy but was still experiencing back pain and was "still unable to work or do any physical activity." (*Id.* 89.) His physical examination revealed "flexion to 80 degrees reproducing pain as well as on hyperextension. Straight leg raise is negative and neurologic exam is normal." (*Id.*) Dr. Carroll recommended another month of physical therapy and no work, following which, he opined, Plaintiff should be able to "resume normal activity." (*Id.*)

### 2. Dr. Michael Gramse - Chiropractor

Dr. Gramse, Plaintiff's chiropractor, performed range of motions tests on June 13, 2005, July 26, 2005, and September 6, 2006. The June 2005 test data revealed flexion at 16 degrees (27% of normal); extension at 1 degree (4% of normal); right lateral flexion 13 degrees (52% of

normal) and left lateral flexion at 11 degrees (44% of normal). (Tr. 105-06.) The September 6, 2006 test data showed flexion at 22 degrees (37% of normal); extension at 3 degrees (12% of normal); right lateral flexion 17 degrees (68% of normal) and left lateral flexion at 17 degrees (68% of normal). (Tr. 105-06.) Dr. Gramse's treatment notes indicate that plaintiff was treated three times per week from June 9, 2005 through January 30, 2006. (*Id.* 117-55.) New York State Workers' Compensation Board Attending Doctor's Reports completed by Dr. Gramse indicate that Plaintiff continued to be treated into March 2007.

### 3. Lumbar Spine MRI

On August 30, 2005 an MRI of the lumbar region of Plaintiff's spine was taken. According to the radiologist's report, it revealed "no fracture, spondylolisthesis, or osseous destructive change. The region of the conus medullaris appears intact. The visual paravertebral soft tissue appear unremarkable." (Tr. 115.) "The L1-2, L2-3 and L3-4 levels are visualized without evidence of disc herniation or canal stenosis. The exiting nerve roots are intact. At L4-5, there is diffuse posterior bulging. There is mild bilateral foraminal encroachment. The exiting nerve roots are intact. The L5-S1 level appear unremarkable. The visualized articulating facets are normally demonstrated at all levels." (*Id.*)

### 4. Dr. Gregory Perrier - Orthopedic Surgeon

Plaintiff was examined by Dr. Gregory Perrier, an orthopedic surgeon, on February 2, 2006. (Tr. 177-78.) Doctor Perrier's examination of the lumbar spine showed paraspinal muscle spasm, tenderness, fasciculation, and positive bilateral straight leg raises at 45 degrees. He found Plaintiff's range of motion was as follows: flexion - 85 degrees (normal 90 degrees); extension - 20 degrees (normal 30 degrees); left rotation - 15 degrees (normal 30 degrees); right rotation - 10

5

degrees (normal 30 degrees); left lateral flexion - 5 degrees (normal 20 degrees); right lateral flexion - ten degrees (normal 20 degrees). (*Id.*) Dr. Perrier recommended pain management, EMG/NCV tests, Lidoderm patch and Zanaflex. (*Id.*)

The record indicates that Plaintiff saw Dr. Perrier again on July 6, 2007. (Tr. 173-74.) His progress notes are illegible. The Workers' Compensation and Attending Doctor's Report and Billing Form completed by Dr. Perrier for this date indicate a diagnosis of "lumbago, spasm of muscle and unspecified myalgia and myositis."

### 5. Dr. Ahmed Elfiky - Neurologist

Plaintiff was first examined by Dr. Ahmed Elfiky, neurologist, on February 3, 2006. (Tr. 101-03.) Dr. Elfiky's examination revealed mild weakness on Plaintiff's left hip flexion/extension and leg extension, positive straight leg raises, muscular spasm at the lumbar paravertebral musculature and a mild limp on ambulation. Primary and secondary sensory modalities appeared intact. He reviewed the August 30, 2005 MRI. Dr. Elfiky's impression was an L4-L5 disc bulge. He recommended an EMG/NV and a series of nerve block injection to be given every one to two months as needed. (*Id.*)

On March 3, 2006, April 28, 2006, September 14, 2006, May 11, 2007, July 6, 2007 and August 31, 2007, Dr. Elfiky administered paravertegral nerve block injections to Plaintiff. (Tr. 180-96.) His notes for first three of the aforementioned dates indicate he diagnosed Plaintiff with an L4-L5 disc bulge, ruling out radiculopathy and piriformis syndrome. His notes for the later three dates state his impression as "L4-L5 diffuse disc bulging with radiculopathy" while the general physical/neurological examination results were essentially unchanged. (*Id.*) Dr. Elfiky's notes for August 31, 2007 refer for the first time to "disability status" stating "[i]n my medical

6

opinion, the patient is moderately/partially disabled."

On October 3, 2007, Dr. Elfiky completed a medical assessment of plaintiff's ability to do work-related activities.[2] He indicated that Plaintiff could lift/carry ten pounds up to 1/3 of an eight hour day. He also indicated that Plaintiff's standing, walking and sitting should be limited to one to two hours per eight hour day. He also limited Plaintiff's ability to climb, stoop, kneel, balance, crouch and crawl to one-third of an eight hour day. He indicated that Plaintiff's ability to push and pull were affected but the ability to reach, feel, speak, handle and hear were unaffected. Dr. Elfiky listed the following medical findings in support of his assessment: electromyography results indicated radiculopathy in the lower extremities, and a MRI indicated diffuse disc bulging in Plaintiff's spine between L4 and L5.

### 6. Dr. David Mun - M.D., Physiatry

On July 17, 2007 Plaintiff was examined by Dr. David Mun. (Tr. 197-98.) The examination of the lower back and lumbar spine revealed no edema, swelling or acute distress. Spasm and diffuse tenderness of the paravertebral muscles was noted. Dr. Mun found limited range of motion on the right and left lateral flexion, as well as with extension and full flexion in the lumbar spine. Motor strength was full in both lower extremities. Gait was normal, sensation intact and straight leg raise and bent leg raise tests were positive. Dr. Mun's diagnoses were lower back pain, lumbar sprain/strain and radiculopathy. (*Id.*)

Dr. Mun examined Plaintiff again on August 13, 2007. (Tr. 199-200.) The examination of the lower back revealed no erythema, no swelling, and no signs of acute trauma. Tenderness

---

[2] The Court notes that although the record contains Dr. Elfiky's notes for August 31, 2007, the medical assessment form completed by Dr. Elfiky indicates the date of last treatment as July 7, 2007.

to palpation was noted in paraspinal muscles in the lower lumbar region. Range of motion at the lumbar spine was 10 degrees in hyperextension to about 80 degrees in forward flexion. Left and right lateral rotation remained 10 degrees. Strength in the bilateral upper and lower extremities was rated as 5/5. Sensation was intact to pin prick, light touch, and proprioception. Deep tendon reflex was 2+. The doctor also noted that Plaintiff ambulated without antalgic gait. Dr. Mun again diagnosed low back pain and lumbar radiculopathy. (*Id.*)

### 7. Dr. Linell Skeene

Plaintiff saw Dr. Linell Skeene, a consultative examiner on February 27, 2006. (Tr. 163-66.) According to Dr. Skeene's report, Plaintiff complained of lower back pain that he described as "sharp and radiating to the left leg with the intensity of 8 of 10" with "no associative numbness" and "aggravation of the lower back pain with sitting more than 2 hours, standing more than 15 minutes, walking more than one block, climbing greater than 3 steps and lifting greater than 7 lb." (*Id.* 163.) Dr. Skeene's noted that Plaintiff appeared to be in no acute distress, had a normal gait, could walk on his heels and toes normally, and squat fully. Dr. Skeene found Plaintiff's cervical spine had full flexion and extension, as well as full lateral flexion and rotary movement in both directions. Upper extremities had a full range of motion, muscle strength was full and reflexes were physiologic and equal. (*Id.*)

With respect to Plaintiff's thoracic and lumbar spinal area, Dr. Skeene reported that Plaintiff has full flexion and extension as well as bilateral rotary movement and lateral flexion. He found mild to moderate tenderness over the lumbar spine and noted mild spasm of the paraspinal muscles. Straight leg raises were negative bilaterally. An x-ray revealed that the lumbosacral spine was within normal limits. Dr. Skeene diagnosed Plaintiff with disc disease of

8

the lumbar spine and opined that plaintiff had minimal limitation for prolonged standing, walking, and heavy lifting. (Tr. 165.)

## DISCUSSION

### I. Standard of Review

#### A. Review of the ALJ's Decision

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits prior to February 7, 2006 was "based on legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

#### B. Eligibility for Disability Benefits

To be eligible for disability benefits under the Social Security Act (the "SSA"), a

9

claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-*

*Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

      C.      **The Treating Physician Rule**

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa,* 168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. *Id.* § 404.1527(d)(2)(I-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32. Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

In addition, it is clearly stated law in the Second Circuit that "while a treating physician's *retrospective* diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence."

11

*Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (emphasis added); *see also Rivera v. Sullivan*, 923 F.2d 964 (2d Cir. 1991) (reviewing Second Circuit law on retrospective diagnosis and reversing denial of benefits where retrospective diagnosis of treating physician not given sufficient weight with regard to degenerative condition).

Finally, the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record. *Rosa*, 168 F.3d at 79. "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Butts v. Barhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'") (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)), *amended on other grounds on rehearing*, 416 F.3d 101 (2d Cir. 2005). Specifically, this duty requires the Commissioner to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved" or their reports are "inadequate for [the Commissioner] to determine whether [claimant] is disabled." 20 C.F.R. §§ 404.1512(e), (e)(1). The Commissioner "may do this by requesting copies of [the claimant's] medical source's records, a new report, or a more detailed report from [the claimant's] medical source." *Id.* § 404.1512(e)(1). The only exception to this requirement is where the Commissioner "know[s] from past experience that the source either cannot or will not provide the necessary findings." *Id.* § 404.1512(e)(2). If the information obtained from the

12

claimant's medical sources is not sufficient to make a disability determination, or the Commissioner is unable to seek clarification from treating sources, the Commissioner will ask the claimant to attend one or more consultative evaluations. *Id.* § 404.1512(f).

II.     *The ALJ's Decision*

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff satisfied the first two steps to wit: (1) Plaintiff had not engaged in substantial gainful activity since March 7, 2005; and (2) Plaintiff had a severe impairment of lumbar derangement with a disc bulge at L4-L5 with radiculopathy. The ALJ concluded that Plaintiff did not meet the third step, however, because his impairment did not meet nor equaled in severity any impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations. The ALJ next found under the fourth factor that Plaintiff's impairment precluded performance of his past relevant work.

Once the ALJ determined that Plaintiff was not able to perform his past relevant work, the ALJ proceeded to the fifth and final step, viz., whether the Commissioner had established that there was other work Plaintiff could have performed. The ALJ found that Plaintiff had the "residual functional capacity to perform light work with some occasional postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling." (Tr. 16).

After the five-step analysis was completed, the ALJ determined that Plaintiff was not disabled under the SSA. (Tr. 21).

III.    **Parties' Arguments**

Plaintiff asserts that the ALJ's decision should be reversed for failing to properly evaluate the medical evidence and credibility. "The ALJ rejected the opinions of Dr[s]. Elfiky, Carroll

13

and Gregory that Plaintiff was totally disabled and unable to do any type of work [] because it was supposedly 'inconsistent with his own finding', yet the ALJ made no effort to clarify that purported inconsistency." (Pl's Mem at 9.) Further, the ALJ failed to "explain what doctor stated Plaintiff has a sedentary RFC let alone a light one, or why he gave that doctor's purported opinion greater weight than any treating doctor. Similarly, the ALJ rejected Plaintiff's credibility based upon testimony that supports his functional limitation." (*Id.* at 9-10.) Plaintiff contends that the matter should be remanded solely for the calculation of Plaintiff's benefits.

The Defendant concedes that the ALJ failed to properly weigh the medical opinions of Plaintiff's treating physicians as recommended in the "treating physician rule" and therefore a remand is needed in order to allow the ALJ to reweigh the evidence. The Defendant asserts that the record is not conclusive on the issue of whether Plaintiff is disabled within the meaning of the SSA and thus an award of benefits would be inappropriate. The Defendant therefore requests the decision of the ALJ be reversed and the matter be remanded to the Commissioner for further proceedings pursuant to the fourth sentence 42 U.S.C. § 405(g).

## IV. Application of the Governing Law to the Present Case

### A. The Treating Physicians Rule

The Court agrees with the parties that the ALJ failed to properly apply the treating physicians rule. The ALJ determined that "controlling weight has not been given to the opinion and assessments of the claimant's treating physicians because they are neither supported by the objective clinical findings nor consistent with the other medical evidence of record." (Tr. 20). "When a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." 20 C.F.R. §

404.1527(d)(2); *Burgess*, 537 F.3d at 129. The ALJ must consider:

> The length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence…, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

*Id.* § 404.1527(d)(2)(i)-(ii), (3)-(5). Therefore, the more frequently the treating physician has treated and consulted with the claimant, the more weight the Commissioner will give to the opinion of the treating source. *Burgess*, 537 F.3d at 129. The Commissioner must then consider the above factors and make a determination as to the weight to be assigned to the opinion of the treating physician. *Id.* "Failure to provide such good reasons for not [] crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 130; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In the instant case, the ALJ failed to set forth a sufficient anaylsis. He failed to explain his reasons for finding that the treating source opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques or were inconsistent with substantial evidenced. He did not identify the inconsistencies between the treating sources opinions and the other medical evidence in the record. Finally, he failed to consider what weight to give to the treating sources' opinions using the six factors listed in 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5). The ALJ's failure to follow the treating physician rule is a failure to apply the proper legal standard and is grounds for reversal. *See, e.g., Speruggia v. Astrue*, 2008 WL 818004 at *9 (E.D.N.Y. Mar. 26. 2008).

In addition, to the extent that the ALJ believed that Dr. Elfiky's RFC was either

15

inconclusive or inconsistent, the ALJ had a duty to develop the record by contacting the doctor to clarify the basis for his RFC. *See, e.g., Miano v. Barnhart*, 2007 WL 764977, *6 (E.D.N.Y. Mar. 14, 2007).

While the ALJ's failure to properly apply the treating physician rule warrants reversal in and of itself, because, as set forth below, remand is appropriate, the Court shall address the other issues raised by Plaintiff, to wit, that the ALJ failed to make a function by function analysis and failed to properly assess Plaintiff's subjective complaints.

**B. Function by Function Analysis**

With respect to Plaintiff's ability to perform any past relevant work, the ALJ stated: "The claimant has past relevant work as a dietary aide, which is described as medium work exertionally and entailed lifting and carrying up to fifty pounds during an eight-hour workday. Accordingly, the claimant is unable to perform past relevant work." (Tr. 20.) After enunciating claimant's age, education and work experience, and residual functional capacity, the ALJ proceeded to conclude that Plaintiff could perform light work. (*Id.* at 20-21.)

In his decision the ALJ "failed to do a 'function by function' analysis of the claimant's capacity to do his past work before classifying the claimant's capacity to work according to exertional categories." *Mardukhayev v. Comm'r of Soc. Secuity*, 2002 WL 603041, * 3 (E.D.N.Y. Mar. 29, 2002). The ALJ's reference to the past relevant work as entailing lifting and carrying up to fifty pounds is inadequate as a function by function analysis.

**C. Assessment of Credibility**

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled. *See* 20 C.F.R. § 404.1529(a). An

ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence. *Id.* § 404.1529(b). If a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *Id.*

> In addition, SSR 96-7p provides in pertinent part:
>
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (July 2, 1996). Absent such findings, a remand is required. *See, e.g.*, *Schultz v. Astrue*, No. 04-CV-1369, 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008).

> Here, the ALJ found as follows:
>
> After considering the evidence of record, the undersigned finds that claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 18.)

The Court finds that not withstanding the traditional deference given an ALJ with respect to credibility, *see Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), the ALJ's decision to disregard Plaintiff's testimony in this case was not supported by substantial evidence. To the extent Plaintiff's reported subjective symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record, an analysis into Plaintiff's subjective complaints was required. The ALJ concluded that Plaintiff's testimony was not entirely credible, yet failed to state what allegations, if any, he found to be credible, the weight given to Plaintiff's statements and the reasons for affording such weight. *See* SSR 96-7. Moreover, to the extent that the ALJ, on remand, considers new evidence in applying the treating physician rule to Plaintiff's claim, *see infra*, the ALJ should also consider whether that reevaluation alters his assessment of Plaintiff's subjective testimony in light of the evidence as a whole, including Plaintiff's prior work history. *See, e.g., Rivera v. Schweiker*, 717 F.2d 719, 724, 725 (2d Cir. 1983); *Schaal v. Apfel*, 134 F.3d 499, 502 (2d Cir. 1998).

## V. The Matter is Remanded

"Courts have declined to remand if the record shows that a finding of disability is compelled and only a calculation of benefits remains." *Medina v. Apfel*, No. 00-CV-3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001); *cf. Schaal*, 134 F.3d at 504 (courts may not award benefits unless the existing record compel solely the conclusion that the claimant has met criteria for establishing disability). "Conversely, if the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings." *Id.* (internal quotation marks and citations omitted). On this record, the Court

cannot conclude that there is persuasive proof of disability such that remand would serve no useful purpose. With the proper legal standard applied, the facts could support a conclusion of either disabled or not disabled. Accordingly, the case is remanded to allow the ALJ to reweigh the evidence, developing the record as may be needed. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence. Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.") (internal citations and quotation marks omitted). Upon remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.

## Conclusion

For all of the reasons stated above, this case is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
November 16, 2009

/s/
Denis R. Hurley
United States District Judge